# In the United States Court of Federal Claims

No. 12-101C
(Filed: September 25, 2012)
**NOT FOR PUBLICATION**

|  |  |
|---|---|
| GREGORY MANDEL RUFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

*Gregory Mandel Ruffin,* plaintiff *pro se*.

*David D'Alessandris,* U.S. Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant.

## O P I N I O N

**FIRESTONE**, *Judge*

Pending before the court are the United States' motions to dismiss certain claims and for judgment on the administrative record together with *pro se* the plaintiff, George Ruffin's motion for judgment on the administrative record. Mr. Ruffin, was administratively separated from the Navy on June 18, 2009. Following his separation from the Navy the plaintiff petitioned the Board of Corrections of Naval Records ("BCNR") for reinstatement, back pay, retirement pay, and correction of his military

record. The BCNR denied relief to Mr. Ruffin whereupon he filed the present action in this court charging that the BCNR decision was arbitrary and capricious, not supported by substantial evidence, and not made in accordance with law. For the reasons discussed below, the government's motions to dismiss are granted-in-part and its motion for judgment on the administrative record is granted. The plaintiff's motion for judgment on the administrative record is denied.

## I. BACKGROUND

The following facts are taken from the complaint and administrative record ("AR") and are not in dispute. Mr. Ruffin enlisted in the Navy on October 25, 1990. AR 1. He served as an Air Traffic Controller and held a security clearance. In August 2006, he reported to Tactical Air Control Squadron 12 in San Diego, California.[1] AR 120-23, 126-27. Mr. Ruffin had been convicted by a civilian court for an alcohol-related offense sometime before August 2006. AR 127. Mr. Ruffin failed to report his civilian conviction to the Department of the Navy Central Adjudication Facility, the organization responsible for approving and revoking security clearances. Id. Upon learning of this unreported conviction, the Central Adjudication Facility conducted an investigation and discovered that Mr. Ruffin also had failed to report other alcohol-related civilian

---

[1] Mr. Ruffin had been disciplined prior to arriving at Tactical Air Control Squadron 12. First, in October 1991 he received non-judicial punishment for violating a lawful written order by possessing alcohol in the barracks. AR 250. He was reduced in rank and ordered to forfeit $376.00 of pay for one month. Id. Second, in June 2000, he was found guilty of the non-judicial punishment of larceny and wrongful appropriation in violation of 10 U.S.C. § 921, Article 121 of the Uniform Code of Military Justice. AR 284. Mr. Ruffin had apparently stolen $43.00 worth of merchandise from the Navy Exchange. His punishment was a suspended reduction in rank. He was also ordered to make restitution in the amount of $43.00 and write a letter of apology to the Exchange. Id.

convictions.  Id.  Thereafter, the Central Adjudication Facility revoked Mr. Ruffin's

interim Secret clearance pending a final determination on his eligibility for a security

clearance.  Id.  On September 19, 2008, the Department of the Navy Central Adjudication

Facility permanently revoked Mr. Ruffin's eligibility for a security clearance.  AR 123.

Separate and apart from the issues surrounding his security clearance, the

Commanding Officer of Tactical Air Control Squadron 12, in March 2008, recommended

to the Chief of Naval Operations that the Chief revoke Mr. Ruffin's Air Traffic Control

Specialist Certificate.  AR 31.  On May 5, 2008, the Chief of Naval Operations approved

the revocation of Mr. Ruffin's Air Traffic Control Specialist Certificate.  Id.  The Chief

of Naval Operations found Mr. Ruffin to lack "the requisite social and moral skills

required to be trusted in the performance of his daily air traffic control duties" and he

ordered Mr. Ruffin to change his enlistment status in what is known as a "forced

conversion."[2]  Id.

On September 26, 2008, Mr. Ruffin was convicted at a Special Court-Martial of

four specifications of making a false official statement in violation of 10 U.S.C. § 907,

---

[2] A forced conversion is the involuntary change of an enlisted rating (i.e. specialty) "based on a member's loss of eligibility to further serve in their present rating."  Navy Military Personnel Manual ("MILPERSMAN") 1440-010, "Change in Rating, Authorization," at 5-9 (Sep. 13, 2006).  A forced conversion can be based on several factors, including the permanent revocation of a member's security clearance, a demonstrated inability or unsuitability for a particular rating, or when the Commanding Officer has lost confidence in the member's ability to safely or effectively serve in their current rating.  Id.  Under MILPERSMAN 1440-010, forced conversions are not to be used in lieu of processing a service member for administrative separation, nor is it appropriate to submit a forced conversion package for service members who are not recommended for retention and have no potential for future service.  Id. at 7.

Article 107 of the Uniform Code of Military Justice.[3] AR 1, 27. The charge and specifications were based on false statements made by Mr. Ruffin concerning his alcohol-related offenses. AR 51. The court-martial sentenced Mr. Ruffin to 89 days confinement and suspended forfeitures of pay in the amount of $1,000 for 12 months. AR 27.

On October 10, 2008, the Commanding Officer of Tactical Air Control Squadron 12 issued to Mr. Ruffin his performance evaluation for the period of November 2007 to September 2008, which included ratings below standards in part for his failure to follow the orders of his chain of command. AR 123. His commander recommended that he not be retained for "failure to adhere to Navy Core Values." AR 122-23.

Mr. Ruffin served his 89 day confinement at the Navy Consolidated Brig in San Diego and, on December 7, 2008, he was released from the brig and assigned Temporary Duty to the Transient Personnel Unit in San Diego ("TPU").[4] AR 27, 57, 390. Mr. Ruffin was not returned to duty at Tactical Air Control Squadron 12 because his security clearance and air traffic control certificate had been revoked. AR 59, 123. Upon entering the TPU, Commander Donna M. Kaspar, the Commanding Officer of the TPU, initiated proceedings to administratively separate Mr. Ruffin pursuant to Navy Military Personnel

---

[3] The maximum punishment for a violation of Article 107 of the Uniform Code of Military Justice is dishonorable discharge, forfeiture of all pay and allowances, and confinement for 5 years. Manual for Courts-Martial ("MCM"), pt. IV, at 47 (2008).

[4] A Transient Personnel Unit ("TPU") is a Navy command designed to temporarily house service members who are either transferring between commands or facing disciplinary or administrative action. See Bureau of Naval Personnel Instruction ("BUPERSINST") 1306.77B, Chap. 1 (Feb. 4, 2008). Under MILPERSMAN 1910-400 (June 27, 2008), "Commanding officers (Cos) may only process for separation those personnel who are permanently assigned to their command; therefore when circumstances warrant, commands may transfer a member of their command temporary duty (TEMDU) . . . to be processed/separated at another command." Id. at Note (2).

Manual ("MILPERSMAN") 1910-142,[5] for Misconduct–Commission of a Serious

Offense.  AR 28-29, 60.

On December 10, 2008, Mr. Ruffin was notified of the pending administrative

separation action.  AR 28.  Mr. Ruffin was also advised of his rights to consult with an

attorney, to request an administrative board, to submit statements to the administrative

board or separation authority, and to be represented by an attorney at an administrative

board.[6]  Id.  Mr. Ruffin requested an administrative board and, although he initially

waived his right to representation at the board, Mr. Ruffin was given military counsel

before the board.  Id.; see also AR 11 (identifying Mr. Ruffin's attorney at his

administrative separation board).  Mr. Ruffin acknowledged that he had received notice

of his administrative separation processing on December 10 and 19, when he indicated

that his response to the notification was complete.  AR 29.

On January 22, 2009, and prior to his administrative separation board hearing, the

Navy Personnel Command issued orders to Mr. Ruffin transferring him from the TPU to

the Naval Base Coronado, California.  AR 82-86.  According to Lieutenant Kristopher

Brazil (Mr. Ruffin's superior officer at the TPU), those orders were cancelled and Mr.

---

[5] MILPERSMAN 1910-142 states, in relevant part, "members may be separated based on commission of a serious military or civilian offense when: . . . (2) Offense would warrant a punitive discharge per reference (a), appendix 12 for same or closely related offense."  Appendix 12 of the MCM identifies the maximum punishments for various court martial offenses, including making "false official statements."  The maximum punishment for making false official statements is confinement for up 5 years and either a dishonorable discharge or a discharge for bad conduct.  MCM, App. 12 ("Maximum Punishment Chart"), at A12-2.

[6] Administrative Separation Boards are adjudicatory in nature and are composed of at least three officers, the "judge" and "jury" who both decide whether separation is warranted and if so the character of the discharge.  See generally, DOD Dir. 1332.14.

Ruffin was specifically instructed to continue to report to the TPU. AR 18. Lieutenant Brazil provided Mr. Ruffin with a copy of the message cancelling his orders to Coronado and told Mr. Ruffin to continue to report to the TPU every day. Id.

Notwithstanding the fact that his transfer orders had been cancelled, Mr. Ruffin attempted to execute the transfer orders on January 28, 2009, checking out of the TPU and checking into the Naval Air Station North Island in Coronado that same day.[7] AR 82. However, shortly after his arrival, Mr. Ruffin's supervisors at Naval Air Station North Island ordered him to return to the TPU because his orders had been cancelled. AR 14. In the meantime, the TPU listed Mr. Ruffin in an Unauthorized Absence status beginning on January 30, 2009. AR 18.

On February 12, 2009, Mr. Ruffin appeared before the administrative separation board convened by Commander Kaspar of the TPU. AR 11-12. As noted, Mr. Ruffin was represented by counsel. AR 11. Mr. Ruffin's counsel was given an opportunity to voir dire the three voting members of the administrative board. His counsel challenged two of the three members based on their relationship with Commander John Pestovic, a Government witness and Mr. Ruffin's former Commanding Officer at Tactical Air Control Squadron 12. AR 12, 18. This challenge was denied by Commander Kaspar. AR 12. Mr. Ruffin was also given the opportunity to object to documents presented to the members of the board, to present his own documents, to question the witnesses against him, and to present his own witnesses. AR 13-21. The issue of whether Mr.

---

[7] There is no indication that Mr. Ruffin's superiors at the TPU approved his detachment date as required by MILPERSMAN 1320-306, "Permanent Change of Station (PCS) Transfer Order and Interpretation" (Apr. 27, 2007).

Ruffin's orders to Naval Base Coronado were cancelled was raised before the administrative board. AR 14, 18. Two witnesses testified that Mr. Ruffin was still assigned to the TPU. Id.

After receiving all of the evidence, the administrative board unanimously concluded that the evidence supported the decision to separate Mr. Ruffin from the Navy and that Mr. Ruffin be separated from the Navy with an "other than honorable" characterization of service. AR 21.

Shortly after the administrative separation board issued its recommendation, Mr. Ruffin's counsel submitted a letter of deficiency to Commander Kaspar. AR 49-52. In the letter, Mr. Ruffin's counsel alleged several procedural deficiencies in the administrative board process and requested that Commander Kaspar set aside the board results or, in the alternative, transfer Mr. Ruffin to the ready reserve. Id. In her Chain of Command recommendation, Commander Kaspar rejected Mr. Ruffin's request and instead concurred with the administrative board's recommendations. AR 53. Her recommendation and the board results were forwarded to the Navy Personnel Command, and on May 21, 2009, Captain L.O. Falardeau, the Assistant Commander, Navy Personnel Command for Career Progression, forwarded Mr. Ruffin's administrative separation package to the Chief of Naval Personnel with a recommendation that he approve an other than honorable discharge for Mr. Ruffin.[8] Id. The recommendation

---

[8] Per MILPERSMAN 1910-704, "Determining Separation Authority" (Sep. 20, 2011), the Secretary of the Navy is the separation authority "[w]hen the sole basis for separation is a serious offense that resulted in a conviction by a special or general court-martial that did not impose a punitive discharge, and an Other Than Honorable discharge is recommended by an

memorandum stated that Mr. Ruffin was being processed for "mandatory administrative separation for misconduct (serious offense)." AR 22, 53. (emphasis added). Mr. Ruffin was, in fact, not processed for "mandatory" administrative separation but only for regular "Misconduct-Commission of a serious offense as evidenced by conviction," under MILPERSMAN 1910-142. AR 28.[9] On June 12, 2009, the Chief of Naval Personnel ordered that Mr. Ruffin be discharged with an "other than honorable" characterization of service. AR 1, 345. On June 16, 2009, Mr. Ruffin's counsel submitted a "request for a stay of the discharge" to the Chief of Naval Personnel through Commander Kaspar and the Commander of Navy Region Southwest. AR 23-24. In his request, Mr. Ruffin asked that his discharge be delayed to allow for resolution of his court-martial appeal and adjudication of a grievance Mr. Ruffin filed against Commander Kaspar. Id.

---

administrative board." The Chief of Naval Personnel has been delegated to serve as the separation authority when the sole basis for separation is a serious offense that resulted in a conviction by a special or general courts-martial that did not impose a punitive discharge, and an Other Than Honorable discharge is warranted. See Def.'s Mot. Addendum B, "Delegation of Other than Honorable Separation Authority in Case of Personnel for Whom a Special or General Court-Martial did not Impose a Punitive Discharge" (Apr. 7, 2003) (approved July 1, 2003). Additionally, the Chief of Naval Personnel is the separation authority "[f]or involuntary separation of active duty members with 18 or more years total active military service." MILPERSMAN 1910-704. Accordingly, because the sole basis used for Mr. Ruffin's separation was a serious offense evidenced by his court martial conviction, and because he had over 18 years of total active military service, the separation package was forwarded to the Chief of Naval Personnel for approval. See AR 53.

[9] Under MILPERSMAN 1910-142, mandatory processing for separation is required for only certain serious offenses including: violent misconduct, unlawful use of controlled substances, drug paraphernialia, and sexual misconduct. However, the procedures employed for all separation proceedings based on commission of a serious offense—those listed above and those, like Mr. Ruffin's, that are identified in Appendix 12 of the MCM—are the same. See MILPERSMAN 1910-142; see also MCM Maximum Punishment Chart at A12-2 ("violation of Uniform Code of Military Justice, Article 107 (4 specifications) – False official statement").

Commander Kaspar forwarded the request for a stay to the Commander of Navy Region Southwest, AR 42, who in turn forwarded the request to the Navy Personnel Command, AR 41. No stay was granted and Mr. Ruffin was discharged from the Navy on June 18, 2009. AR 155.[10]

Mr. Ruffin petitioned the BCNR on February 10, 2011 seeking reinstatement in the military. AR 5.[11] The petition also included a request for an upgrade in his discharge status. After reviewing all materials submitted by Mr. Ruffin, as well as his Navy service record and relevant law, the BCNR denied Mr. Ruffin's petition and refused to set aside Mr. Ruffin's discharge. AR 1. The BCNR did not consider Mr. Ruffin's additional request for a change in his discharge status on the grounds that he had not exhausted his administrative remedies before the Naval Discharge Review Board ("NDRB"). AR 2.[12]

In his complaint before this court, Mr. Ruffin challenges the BCNR's refusal to grant him relief. Mr. Ruffin claims that he was unlawfully discharged and he seeks back pay, retirement, and correction of his record pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Military Pay Act, 37 U.S.C. § 204. Within his claim, Mr. Ruffin has alleged several specific defects in his separation. Mr. Ruffin alleges violations of

[10] Mr. Ruffin failed to report for duty on June 18, 2009, and was in an Unauthorized Absence status on the date of his separation. AR 320.

[11] Mr. Ruffin's petition to the BCNR largely mirrored the complaint in this case; however, Mr. Ruffin's petition to the BCNR did not contain a claim seeking retroactive promotion to the pay grade of E-7. AR 5-10.

[12] SECNAVINST 5420.193, "Board for Correction of Naval Records," Encl. (3) (Nov. 19, 1997), states that an applicant must exhaust his administrative remedies before petitioning the BCNR. The Instruction specifically states that "[r]equests for an upgrade of a discharge which is less than 15 years old and not awarded by a general court-martial must be submitted first to the [NDRB]." SECNAVINST 5420.193, Encl. (3), ¶ 3a(1).

Secretary of the Navy Instruction ("SECNAVINST") 1640.9C, "Department of Navy Corrections Manual" (Jan. 3, 2006),[13] because Mr. Ruffin was assigned to TPU upon completing his confinement and because Mr. Ruffin was not processed for administrative separation until after he completed his confinement. See Compl. ¶ 1. Mr. Ruffin alleges violations of the Fifth and Fourteenth Amendments because Captain Falardeau, the Assistant Commander, Navy Personnel Command for Career Progression, included in his endorsement of Mr. Ruffin's separation package an inaccurate statement suggesting that Mr. Ruffin had been subject to mandatory administrative separation processing. See Compl. ¶ 2. Mr. Ruffin alleges violation of MILPERSMAN 1910-704[14] because the Chief of Naval Personnel approved Mr. Ruffin's separation rather than the Secretary of the Navy. See Compl. ¶ 3. Mr. Ruffin alleges a violation of 10 U.S.C. § 1176 because he had over 18 years of military service at the time of his separation and "could not be involuntarily separated."[15] See Compl. ¶ 4. Mr. Ruffin alleges a violation of Navy rules

---

[13] SECNAVINST 1640.9C establishes standardized policies for the operation of Navy confinement facilities and provides, in relevant part, that "disposition boards" may recommend a prisoner's return to duty after serving his sentence or discharge. With respect to discharge, if the disposition board recommends discharge "reviews should be scheduled in a timely manner so that administrative processing, if required, will be completed while the individual is in confinement." SECNAVINST 1640.9C. As discussed above, Mr. Ruffin was discharged after he was returned to duty and his commanding officer determined that he should be discharged by reason of misconduct.

[14] Under MILPERSMAN 1910-704, the Secretary of the Navy is the separation authority when the basis for separation is by reason of "misconduct-commission of a serious offense."

[15] 10 U.S.C. § 1176 provides in relevant part: "[a] regular enlisted member who is selected to be involuntarily separated . . . and who on the date on which the member is to be discharged is within two years of qualifying for retirement . . . or of qualifying for transfer to the Fleet Reserve . . . shall be retained on active duty until the member is qualified for retirement or transfer to the

- 10 -

and regulations because he was not assigned to TPU at the time of his administrative board and because commanding officers of TPUs do not have the authority to process a service member for separation post-confinement. See Compl. ¶ 5. Mr. Ruffin alleges a violation of his right to due process because the administrative board members were biased against him due to their affiliation with Tactical Air Control Squadron 12 and his previous equal opportunity complaints against that command. See Compl. ¶ 6. Finally, Mr. Ruffin alleges violations of his right to due process because the Navy did not delay his separation despite his request for a stay of the discharge. See Compl. ¶ 7.

Mr. Ruffin asks this court to set aside his discharge and award him back pay in the amount of $103,500 for the time that he had remaining on his enlistment contract when he was administratively separated. Compl. at 5. Mr. Ruffin also seeks to be retroactively retired as of October 24, 2010,[16] along with an award of $25,600 in back retired pay. Id. Additionally, Mr. Ruffin asks that his separation be changed to honorable and that the reason for his separation be changed to "retired." Id. Finally, Mr. Ruffin asks that he be promoted to the enlisted pay grade of E-7 because he argues that "if not wrongfully separated [he] would have been promoted." Id.

---

Fleet Reserve . . . unless the member is sooner retired or discharged under any other provision of law." Id. (emphasis added).

[16] An enlisted service member is eligible to be transferred from active duty to the Fleet Reserve upon completing 20 years of active service. 10 U.S.C. § 6330(b). Service members in the Fleet Reserve are entitled to retainer pay. 10 U.S.C. § 6330(c)(1). Members of the Fleet Reserve are eligible to be retired upon completing 30 years of service. 10 U.S.C. § 6331(a).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The government has moved to dismiss certain of Mr. Ruffin's claims for lack of jurisdiction. Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter the court must decide. See PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)). Jurisdiction is a threshold matter because a case cannot proceed if a court lacks jurisdiction to hear it. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation omitted)). In this connection, the court must determine whether each of his claims is money-mandating. If the court determines jurisdiction is lacking the court must dismiss the claims under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").

A *pro se* plaintiff, such as Mr. Ruffin, is entitled to a liberal construction of the pleadings. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a *pro se* plaintiff must still satisfy the court's jurisdictional requirements. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004) ("This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements."), aff'd, 98 F. App'x 860 (Fed. Cir. 2004); Kelly v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

In addition, the government has moved to dismiss several of plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. To avoid dismissal for failure to state a claim upon which relief can be granted under RCFC

12(b)(6), the complaint must contain facts sufficient to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." Bell Atl. Corp., 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp., 550 U.S. at 555, 557). In considering a motion under RCFC 12(b)(6), "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing Papasan v. Allain, 478 U.S. 265, 283 (1986); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). "[T]he Court of Federal Claims has both the power and the obligation to dismiss cases in which no claim has been properly stated." Brach v. United States, 443 F. App'x 543, 547 (Fed. Cir. 2011).

Finally, both the government and Mr. Ruffin have moved for judgment on the administrative record. The standards to be applied under RCFC 52.1 for review on the administrative record are well settled. In reviewing a decision of a military corrections board, the court seeks to determine whether [the decision] is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006); see also Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005); Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998). To

make that decision, the court must limit its review to the administrative record as it was presented to the BCNR. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006). In this connection, it is important to note that this court does not act as a "super correction board." Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979); Hwang v. United States, 94 Fed. Cl. 259, 269 (2010). In addition, "a plaintiff must 'overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" Doe v. United States, 132 F.3d 1430, 1434 (Fed. Cir. 1997) (quoting Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979)).

### B. Motion to Dismiss, in Part, for Lack of Subject Matter Jurisdiction

The government contends that this court lacks subject matter jurisdiction to hear Mr. Ruffin's claims that are premised on the Due Process Clause and Equal Protection Clause of the Fifth Amendment to the United States Constitution on the grounds that these constitutional provisions are not money-mandating. The government seeks dismissal of Mr. Ruffin's constitutional claims under RCFC 12(b)(1).

Mr. Ruffin responds that he is not seeking money damages based on violations of these constitutional provisions; rather, he states that his claim is for back pay under the Military Pay Act, 37 U.S.C. § 204. He argues that the alleged constitutional violations demonstrate that his discharge from the Navy was legally wrong.

In Holley v. United States, 124 F.3d 1462, 1465-66 (1997), the Federal Circuit determined that this court has jurisdiction to review constitutional claims in connection with determining whether or not the discharge of a military officer was wrongful. Id.

- 14 -

("Tucker Act claims asserting wrongful military discharge have arisen in a variety of factual and legal situations. Some have been based on violations of statute, some on non-compliance with regulations, and some have raised constitutional issues. . . . It is no longer subject to debate whether a Tucker Act claim may be stated for military back pay and ancillary relief. The Court of Federal Claims, like the Court of Claims before it, has jurisdiction of such claims."); see also Berkley v. United States, 287 F.3d 1076, 1081 (Fed. Cir. 2002) (exercising jurisdiction in a military pay class action case where the basis of officers' complaint was "that the formal instructions governing selection for involuntary termination required different treatment of officers based on their race or gender, thereby violating the equal protection guarantee of the Fifth Amendment to the United States Constitution"). Mr. Ruffin's constitutional issues "do[] not stand alone, but [are] factor[s] in the claim for which Tucker Act jurisdiction is established." Holley, 124 F.3d at 1466. "The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the discharge was wrongful." Id. Under the reasoning of Holley, the court has jurisdiction to consider Mr. Ruffin's constitutional claims in connection with his wrongful discharge claim. The government's motion is therefore denied.[17]

---

[17] Because the Fourteenth Amendment does not apply to the United States, U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .") (emphasis added), and is not a money-mandating provision the court does not have jurisdiction over Mr. Ruffin's claim under this constitutional provision. See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Webber v. United States, 231 Ct. Cl. 1009 (1982).

**C.      Motion to Dismiss, in Part, for Failure to State a Claim**

The government contends that Mr. Ruffin's claim for promotion to the next higher pay grade must be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.  The government argues that Mr. Ruffin has waived his promotion claim on the grounds that Mr. Ruffin failed to raise it in his BCNR petition.  The court agrees.

Military personnel are not required to petition corrections boards before coming to this court, but if they do, they must present their entire case to the board or risk the likelihood of waiver.  See Metz v. United States, 466 F.3d 991, 999-1000 (Fed. Cir. 2006) (citing Murakami v. United States, 398 F.3d 1342, 1354 (Fed. Cir. 2005)); Doyle v. United States, 599 F.2d 984, 1000-01, modified, 609 F.2d 990 (Ct. Cl. 1979).  It is well settled that the failure to raise an issue at the administrative level waives the right to appellate review of that issue.  See Metz, 466 F.3d at 999; see also Martinez v. United States, 77 Fed. Cl. 318, 325 n.10 (2007) ("Plaintiff's failure to raise this issue either in the original request to the ABCMR or on reconsideration constitutes a waiver of those issues in future litigation.").

In this case, Mr. Ruffin elected to file his claim first at the BCNR.  Thus he may only pursue claims here that he brought before the board.  The promotion claim was not raised before the board.  Accordingly, Mr. Ruffin's promotion claim must be dismissed.

In addition the government seeks to dismiss Mr. Ruffin's challenge to his post-confinement assignment to the TPU under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.  The government contends that military assignments

- 16 -

are wholly internal to the military and that Mr. Ruffin's claim challenging his assignment to the TPU is nonjusticiable.[18]

It is well-settled that "assignments and reassignments are matters wholly internal to the military and inappropriate for judicial review." King v. United States, 50 Fed. Cl. 701, 710 (2001), aff'd, 53 F. App'x 930 (Fed. Cir. 2002); see also Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993) ("[T]housands of [ ] routine personnel decisions regularly made by the services . . . are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." (quoting Voge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988))).

Mr. Ruffin argues, however, that the court may review his assignment on the grounds that it violates SECNAVINST 1640.9C. Mr. Ruffin argues that under SECNAVINST 1640.9C, he should have been given permanent orders to his next assignment after he completed his court martial sentence, because he was not administratively discharged before he completed his sentence. As previously noted, supra note 13, SECNAVINST 1640.9C provides in relevant part: "reviews should be scheduled in a timely manner so that administrative processing, if required, will be completed while the individual is in confinement."

The government argues that the Navy's decision to assign Mr. Ruffin to the TPU is beyond this court's review. However, the government concedes that this court does

---

[18] Nonjusticiable claims are appropriately dismissed for failure to state a claim. See Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993).

- 17 -

have jurisdiction over whether Mr. Ruffin was properly discharged by an administrative board established at the direction of the TPU.

The court agrees with the government. Mr. Ruffin's challenge to his assignment to the TPU is not justiciable. Therefore, Mr. Ruffin's claim based on his objection to his post-confinement assignment to the TPU, to the extent it is separate and apart from his claim for wrongful discharge, must be dismissed.

**D.  The BCNR's Decision was not Arbitrary, Capricious, Contrary to Law, or Unsupported by Substantial Evidence**

In its request for judgment on the administrative record, the government argues that the BCNR's decision is fully supported and that Mr. Ruffin's objections are without merit. Mr. Ruffin, in response, claims that the BCNR's decision denying him relief was arbitrary, capricious, and contrary to law. Specifically, Mr. Ruffin contends that: 1) the Commander of the TPU lacked the legal authority to commence administrative separation proceedings against him; 2) composition of the administrative separation board was legally defective because it included members from his previous command and because testimony regarding prior equal opportunity complaints biased the proceeding; 3) the memorandum transmitting the separation recommendation of the separation board to the Chief of Naval Personnel, which mistakenly stated that Mr. Ruffin was subject to "mandatory processing" for separation, deprived him of due process and equal protection; 4) the Chief of Naval Personnel was not legally authorized to approve Mr. Ruffin's separation; and 5) his discharge violated 10 U.S.C. 1176, because he had 18 years of service. Each of Mr. Ruffin's challenges will be discussed in turn.

- 18 -

**1.    The TPU was authorized to convene Mr. Ruffin's separation board.**

Mr. Ruffin argues that the BCNR erred in concluding that the TPU was authorized to initiate administrative separation proceedings against him. As discussed above, Mr. Ruffin argues that, under SECNAV 1640.9C, if a disposition board did not initiate an administrative separation proceeding before he was released from confinement, then he could not be separated from any other administrative separation board and that he instead had to be assigned to a permanent command. The government argues that Mr. Ruffin's reliance on SECNAVINST 1640.9C is misplaced. For the reasons that follow, the court agrees with the government.

SECNAVINST 1640.9C is a regulation governing the efficient operation of a prison facility, and nothing in the regulation prohibits the Navy from sending a service member to a TPU after a service member completes his sentence. One of the main responsibilities of the TPU is to process service members who are transferring between commands, or transferring from one job rating to another, or facing disciplinary or administrative action. See BUPERSINST 1306.77B, Chap. 1. In this case, Mr. Ruffin had lost both his security clearance and air traffic controller certificate. AR 59, 123. As a consequence, he could not assume a new position as an air traffic controller. In such circumstances, assigning him the TPU was consistent with the applicable Navy regulation. Mr. Ruffin's assumption that SECNAVINST 1640.9C barred other agency action is simply unsupported. Where, as here, the two regulations can be read together,

the agency's application of its regulations will be upheld.  Cathedral Candle Co. v. United States, 400 F.3d 1352, 1363 (Fed. Cir. 2005) ("[A]n agency's interpretation of its own regulations is entitled to broad deference from the courts.").  As a matter of law, when an agency's interpretation of its own regulations is neither "contrary to the express terms of the regulation, nor . . . at odds with the purposes served by the regulation," it will be upheld.  Id. at 1363-64.  Thus, assigning Mr. Ruffin to the TPU was legally authorized.

Mr. Ruffin's assumption that SECNAVINST 1640.9C also barred the TPU from administratively processing him for separation is not supported.  Various regulations authorize temporary duty commands to take administrative separation action. See MILPERSMAN 1910-400, Note (2) ("commands may transfer a member of their command temporary duty (TEMDU) (not temporary additional duty (TEMADD)) to be process/separated by another command"); BUPERSINST 1306.77B, Chap. 1 (among the responsibilities of the TPU is to administratively process personnel who are facing disciplinary or administrative action).  Thus, the TPU had the authority to take administrative action.

Moreover, a careful reading of SECNAVINST 1640.9C demonstrates that it provides for administrative separations prior to release from confinement only where administrative processing for separation is "required" under military regulation.  As noted above, there are certain categories of crimes that require administrative processing for separation.  The crimes for which Mr. Ruffin was convicted at court-martial—false official statements—while qualifying as serious offenses under the Uniform Code of

Military Justice, are not among those listed for mandatory separation processing under the MILPERSMAN. See MILPERSMAN 1910-142. In sum, nothing in SECNAVINST 1640.9C expressly addressed Mr. Ruffin's circumstance and thus SECNAVINST 1640.9C could not be construed to have barred the TPU Commander from convening an administrative separation board. Accordingly, the BCNR's decision to deny Mr. Ruffin's request for relief on this basis was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 2. The composition of the Administrative Separation Board did not violate Mr. Ruffin's due process rights.

Mr. Ruffin also claims that the separation board which was charged with conducting a hearing was legally defective because two of the three voting members were from his previous command and because the testimony regarding his prior equal opportunity complaints against his commanding officer biased the proceeding. The government argues in response that at the time of the administrative separation board hearing, Mr. Ruffin's former commanding officer, Commander Pestovic, was not the commanding officer of any of the members of the board, see AR 49, 60, and thus Mr. Ruffin's board cannot be presumed to have been biased against him on this ground. In addition, the government argues there was no evidence introduced to suggest that the discharge recommendation by the board was made in retaliation to Mr. Ruffin's equal opportunity complaints against his former commander. For the reasons that follow, the court agrees with the government.

Mr. Ruffin's lawyer at the administrative separation board asked members whether they knew any of the witnesses to be called. Based on their answers, Mr. Ruffin's lawyer challenged two of the three members because Commander Pestovic had served as their commanding officer in the past. AR 12 ¶ 15, 49. The evidence established that at the time of Mr. Ruffin's administrative separation board, Commander Pestovic was stationed at a different duty station and thus had no direct authority over any board members. See AR 18 ¶ 76 ("CDR Pestovic stated he currently stationed [sic] at Tactical Air Squadron One."). The Commanding Officer of the TPU considered the challenge to these members by Mr. Ruffin's counsel and concluded that these members could perform their duties in a fair and neutral manner. AR 60.[19]

In addition, the record demonstrates that the administrative separation board convened by the Commanding Officer of the TPU complied with all of the requirements set forth in the MILPERSMAN for the composition, procedures, and evidence presented at Mr. Ruffin's administrative separation proceedings. See MILPERSMAN 1910-502, "Administrative Board Composition" (Nov. 5, 2010); MILPERSMAN 1910-212, "Factors Considered for Retention or Separation" (May 28, 2008). Navy regulations require that voting members be (a) experienced commissioned, warrant, or noncommissioned officers; (b) that the senior member be in the pay grade O-4 or above; (c) that the majority of the members be commissioned or warranted officers; and (d) that

---

[19] The convening authority is the officer with authority pursuant to MILPERSMAN 1910-414 to process the service member for administrative separation through the administrative board process. In this case the convening authority was Commander Donna M. Kasper, Commanding Officer, Navy Region Southwest TPU, San Diego. See AR, 11, 12.

any enlisted personnel appointed to the board be in the pay grade E-7 or above. MILPERSMAN 1910-502. The record establishes that the composition of the board complied with these criteria.

The Commanding Officer also determined that Mr. Ruffin's complaints about his former chain of command did not factor into the discharge recommendation. AR 60. There is no evidence to suggest otherwise. Mr. Ruffin did not present any evidence of any specific bias on the part of any member or any evidence that the board members made their recommendation in retaliation for earlier EEO complaints by Mr Ruffin. The record demonstrates that the discharge recommendation was based on Mr. Ruffin's conviction for making false official statements, which constituted the commission of a serious offense. AR 22, 77. The court does not have any basis for second guessing the board's recommendation or Commanding Officer's decision regarding the composition of the board and Mr. Ruffin's allegations of retaliation.

In such circumstances, the BCNR's decision to deny Mr. Ruffin's request for relief on the grounds that the administrative board was biased against him was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 3. Any error in the memorandum transmitting the administrative separation recommendation was harmless.

Mr. Ruffin charges that a misstatement in Captain Falardeau's memorandum to the Chief of Naval Personnel for a final decision which suggested that Mr. Ruffin was being recommended separation with other than honorable discharge following "mandatory processing" deprived him of due process and equal protection. Mr. Ruffin asserts that

this error in the cover memorandum would have led the Chief of Personnel to believe that Mr. Ruffin had been subject to court martial for a more serious crime than making false official statements and thus to believe that he was more deserving of discharge. As noted above, "mandatory processing" is required only in cases of conviction for sexual assault and other violent crimes, whereas Mr. Ruffin's crime of "making false official statements" does not mandate "mandatory processing" for separation for a serious offense.

The government argues in response that any error in the cover memorandum forwarded to the Chief of Naval Personnel was harmless because the nature of Mr. Ruffin's offenses and the reason for the recommended discharge were made clear in the cover memorandum and supporting documents. Specifically, the government argues that a review of the cover memorandum and attached file sent to the Chief of Naval Personnel demonstrates that there was no suggestion that Mr. Ruffin was being recommended for separation based on the commission of a violent or sexual offense. The memorandum states that Mr. Ruffin was convicted of the serious offense of making false official statements. Therefore, the government contends, any error in characterizing the type of processing of his separation was neutralized by the express language in the memorandum explaining the nature of the offense. The government argues that the Chief of Naval Personnel was not misled.

The cover memorandum stated:

> AC1 Ruffin has over 18 years, 5 months of active duty service . . . .  On 26 September 2008, AC1 Ruffin was convicted at a special court-martial for <u>violation of Uniform Code of Military Justice, Article 107 (4 specifications) – False official statement</u>.  He was sentenced to 89 days confinement and forfeiture of $ 1,000.00 per month for 12 months.
>
> AC1 Ruffin was processed for <u>mandatory</u> administrative separation for misconduct (serious offense).  The administrative board found, by a vote of 3 to 0, that the preponderance of the evidence supported misconduct (serious offense) and voted to separate with an other than Honorable discharge.

AR 22 (emphasis added).

The court agrees with the government that a single error in the transmittal memorandum to the Chief of Naval Personnel was harmless because the memorandum correctly identified on its face the offense for which Mr. Ruffin was convicted and administratively processed such that the Chief of Naval Personnel, who is charged with knowing Navy regulations regarding separations for reasons of misconduct, would have understood that Mr. Ruffin had not committed a serious offense that required "mandatory" processing, but that he had instead been processed under the non-mandatory provisions of the regulation.  <u>See</u> MILPERSMAN 1910-142.  Accordingly, the BCNR's decision to deny Mr. Ruffin's request for relief on this basis is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 4. The Chief of Naval Personnel was authorized to approve Mr. Ruffin's discharge.

Mr. Ruffin also challenges his discharge on the grounds that it was not approved by the Secretary of the Navy under MILPERSMAN 1910-704.  Mr. Ruffin argues that

under the applicable regulation, the Chief of Naval Personnel did not have final decision making authority over his separation and therefore his discharge was not authorized.

The government agrees with Mr. Ruffin that under MILPERSMAN 1910-704 the Secretary of the Navy is the delegated separation authority for separations based on commission of a serious offense. However, the government further argues that the Secretary of the Navy delegated that authority to the Deputy Chief of Naval Personnel, and thus a decision by the Secretary of the Navy is not required. Moreover, the government argues the Chief of Naval Personnel has approval authority over involuntary separations for active duty members, like Mr. Ruffin, who have had 18 years or more of total active military service.

The court agrees with the government that the claim is without merit. The Chief of Naval Personnel was authorized to approve Mr. Ruffin's discharge. See Def.'s Mot. Addendum B, "Delegation of Other than Honorable Separation Authority in Case of Personnel for Whom a Special or General Court-Martial did not Impose a Punitive Discharge" (Apr. 7, 2003) (approved July 1, 2003). Mr. Ruffin has failed to identify any legal authority revoking this delegation. Accordingly, the BCNR's decision to deny Mr. Ruffin's request for relief on this basis is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### 5. 10 U.S.C. § 1176 does not bar Mr. Ruffin's discharge.

Mr. Ruffin finally argues that the BCNR decision should be set aside because he was involuntarily discharged within two years of qualifying for retirement under 10 U.S.C. § 1176. 10 U.S.C. § 1176 provides, in relevant part, as follows:

> [a] regular enlisted member who is selected to be <u>involuntarily separated</u> . . . and who on the date on which the member is to be discharged is within two years of qualifying for retirement . . . or of qualifying for transfer to the Fleet Reserve . . . shall be retained on active duty until the member is qualified for retirement or transfer to the Fleet Reserve . . . unless the member is sooner retired <u>or discharged under any other provision of law</u>.

<u>Id.</u> (emphasis added). The government argues in response that Mr. Ruffin's reliance on 10 U.S.C. § 1176 is misplaced because Mr. Ruffin was "discharged" pursuant to "any other provision of law."

Specifically, the government argues that under another provision of law, 10 U.S.C. § 1169, Congress directed the Secretary of Defense and the Service Secretaries to set standards for administrative separation of enlisted members before the end of their enlistment contracts. Pursuant to this authority, the Secretary of Defense promulgated Department of Defense Directive 1332.14, Enclosure 3, which specifically authorizes separation of enlisted members for misconduct resulting from commission of a serious offense, including "[c]omission of a serious military or civilian offense if a punitive discharge would be authorized for the same or a closely related offense under the Manual for Courts-Martial."[20]  <u>Id.</u> at ¶ 10(a)(3). The Secretary of the Navy has in turn promulgated SECNAVINST 1910.4B, which also authorizes separation of enlisted members for commission of a serious offense, and pursuant to which the Chief of Naval Personnel promulgated Articles 1900 and 1910 of the MILPERSMAN. <u>See</u>

---

[20] The offense of false official statements under Article 107 of the Uniform Code of Military Justice False falls into this category because it is punishable by a Dishonorable Discharge and up to 5 years confinement. <u>See</u> 10 U.S.C. § 907; MCM Maximum Punishment Chart at A12-2 ("violation of Uniform Code of Military Justice, Article 107 (4 specifications) – False official statement").

SECNAVINST 1910.4B; Strickland v. United States, 69 Fed. Cl. 684, 700-01 (2006) (tracing history of MILPERSMAN sections and relevant instructions). In this case, the government continues, Mr. Ruffin was separated pursuant to MILPERSMAN 1910-142, "Separation By Reason of Misconduct – Commission of a Serious Offense." Based on these authorities, the government concludes, Mr. Ruffin's separation and discharge was lawful pursuant to "other provision of law."

The government also explains that Mr. Ruffin was not "involuntary separated" in any event. The term "involuntary separation" is defined in 10 U.S.C. § 1141 and expressly excludes discharges under Other than Honorable conditions. Pursuant to 10 U.S.C. § 1141, a member of the armed forces shall be considered to be "involuntarily separated" if the member was on active duty after November 29, 2003 and "in the case of a regular enlisted member serving on active duty, the member is (A) denied reenlistment, or (B) involuntarily discharged under other than adverse conditions, as characterized by the Secretary concerned." 10 U.S.C. § 1141(3) (emphasis added). Because Mr. Ruffin was discharged under Other than Honorable conditions, he was not "involuntarily separated" pursuant to either 10 U.S.C. § 1141 or § 1176 and was not qualified to be retained in the Naval service.

The court agrees with the government. Mr. Ruffin's discharge was under Other than Honorable conditions; thus he was not entitled to the protections afforded under 10 U.S.C. § 1176. The BCNR's decision to deny Mr. Ruffin's request for relief on this basis was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the United States' motions to dismiss are **GRANTED-IN-PART** and **DENIED-IN-PART**.  The government's motion for judgment on the administrative record is **GRANTED**.  Plaintiff's motion for judgment on the administrative record is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.  Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge
